[37 NYS3d 343]

In the Matter of ELIOT F. BLOOM, an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE TENTH JUDICIAL DISTRICT, Petitioner.

Second Department, September 21, 2016

**APPEARANCES OF COUNSEL**

*Mitchell T. Borkowsky*, Hauppauge, for petitioner.
*Brian J. Davis*, Garden City, for respondent.

**OPINION OF THE COURT**

Per Curiam.

The Grievance Committee for the Tenth Judicial District (hereinafter the petitioner) served the respondent with a verified petition dated November 18, 2014, containing three charges of professional misconduct. After a preliminary conference held on June 26, 2015, and a hearing held on September 10, 2015, the Special Referee sustained charges one and two, but declined to sustain charge three, in a report dated December 9, 2015. The petitioner moves to confirm the report of the Special Referee insofar as it sustains charges one and two, and to impose such discipline upon the respondent as this Court deems appropriate. The petitioner does not dispute the finding of the Special Referee with respect to charge three. The respondent, by counsel, opposes the motion, and cross-moves, among other things, to dismiss the petition with prejudice. In the event that this Court denies such relief, the respondent requests that this Court, inter alia, grant a new hearing, disaffirm the report of the Special Referee insofar as it sustains charges one and two, or reopen the hearing for the purpose of providing evidence in mitigation. Should this Court decide to impose discipline, the respondent seeks a private reprimand, or a sanction no greater than a public censure.

The allegations of the petition emanate from the respondent's representation of Jerry Gregston in a civil action against Global Resources Development, Inc. (hereinafter Global). The petition alleges that the respondent was a director and officer of Global, that he failed to fully disclose the implications of his relationship with Global to Gregston, and that the respondent neglected the civil action. Charge one alleges that the respondent engaged in a conflict of interest, in violation of former Code of Professional Responsibility DR 5-101 (a) (22 NYCRR 1200.20 [a]), and charge two alleges that the respondent

neglected a legal matter entrusted to him, in violation of former Code of Professional Responsibility DR 6-101 (a) (3) (22 NYCRR 1200.30 [a] [3]).

During the preliminary conference on June 26, 2015, the petitioner, represented by staff counsel Michael Fuchs, produced a four-page document in connection with Global's incorporation (hereinafter the Global document), which he claimed had been retrieved from the website of the New York Department of State Division of Corporations. The last two pages of the Global document purport to be minutes of an organizational meeting (hereinafter the minutes). Prior to the hearing, it was determined by the respondent's counsel that the New York Department of State Division of Corporations did not maintain corporate records such as the minutes, and so advised the Special Referee and the petitioner's counsel in advance of the hearing.

At the hearing on September 10, 2015, the respondent moved to preclude the minutes. He argued that the introduction of the minutes violated the best evidence rule, as the document was being offered to prove its contents without a proper evidentiary foundation, including an explanation as to what happened to the original document. The petitioner's counsel acknowledged that his prior representation that the Global document came from an official New York State website "was an inadvertent mistake." Nevertheless, the petitioner sought to introduce the entire Global document upon the assertion that the respondent had identified his signature on the minutes at his examination under oath during the investigation by the petitioner. The Special Referee denied the motion to preclude the minutes, and the Global document was received in evidence. Further, the petitioner called Gregston as a witness and submitted an additional 12 exhibits into evidence, including a redacted transcript from the respondent's examination under oath on May 19, 2014, and certified copies of documents from the court file in connection with the civil action against Global. The respondent testified on his own behalf and submitted three exhibits into evidence.

On his cross motion, the respondent contends, among other things, that the Special Referee erred in permitting the Global document to be received into evidence. In view thereof, the respondent seeks dismissal of the petition with prejudice, or in the alternative, a new hearing. Based upon our review of the record, the respondent did not object to the admission into

evidence of the first two pages of the Global document. Rather, his objection was limited to the minutes, which were the last two pages of the Global document. We conclude that, although the petitioner failed to establish a proper evidentiary foundation for the minutes, charges one and two are supported by a preponderance of the credible evidence, independent of the Global minutes, as follows:

In or about August 2001, Daniel W. Krevsky, Michael Dakis, and Duane James met at the respondent's office to discuss with him their plan to incorporate Global. On or about August 24, 2001, Global was incorporated in the State of New York, and the respondent's office address was designated as the address for the entity. The respondent, Krevsky, Dakis, and James were each designated a director of Global. The respondent was also designated as a corporate officer of Global. On or about December 29, 2004, Global became "inactive."

Lakhinder Singh and Gregston each claim that they made loans to Global in 2002. Although the loans were to be repaid within one year, Singh and Gregston allege that Global failed to do so. Initially, when Gregston approached the respondent to represent him in the action against Global, the respondent told Gregston "to get a hold of Barry [Phillips,]" the respondent's friend. When asked why he didn't take the case, the respondent stated, among other things, that he declined because he "didn't want to get involved in suing Krevsky, because he came to [him] through friends."

Singh, represented by Barry Phillips, commenced a civil action by summons and verified complaint dated June 10, 2004, in Supreme Court, Nassau County, entitled *Singh v Global Resources Development, Inc*. That complaint alleged that, in or about March 2002, Singh loaned the defendants, Global, Krevsky, Dakis, and James, the sum of $75,000, the defendants agreed to repay the loan in one year, and they failed to do so. Singh sought damages in the amount of $75,000, and an accounting of the defendants' books. By summons and verified complaint dated October 4, 2004, Gregston, represented by Phillips, also commenced an action in Supreme Court, Nassau County, entitled *Gregston v Global Resources Development, Inc*. That complaint alleged that, in or about November 2002, Gregston loaned the defendants, Global, Krevsky, Dakis, and James, the sum of $220,000, the defendants agreed to repay the loan in one year, and they failed to do so. Gregston sought damages in the amount of $220,000, and an accounting of the

defendants' books. By order of the Supreme Court, Nassau County, dated September 1, 2005, the Singh and Gregston actions were consolidated. Shortly thereafter, in an email dated September 22, 2005, Phillips notified the respondent that he was going to file a motion to be relieved as counsel in the consolidated action. In a reply email of the same date, the respondent advised Phillips that he had already filed notices of appearance, and thanked Phillips "so much for [his] willingness to help [him] with those cases." Phillips replied that he would advise the court that the respondent would appear on October 18, 2005, in connection with a motion to dismiss the action that was filed by Dakis.

Both the respondent and Gregston testified at the hearing that they had known each other for many years, and that the respondent had represented Gregston for certain legal matters. Gregston testified that the respondent neither advised him that he was, or had been, one of Global's directors or officers, nor discussed with him his relationship with the other Global directors. In contrast, the respondent testified that he advised Gregston that Global was a company that involved his friends, that his friends had discussed with him their business product, an energy device, and that he had been listed as a director and as a vice president for Global. Further, the respondent testified that he told Gregston that he didn't think the company was viable, and that he "preferred not to get him involved or continue his involvement in the case that would go nowhere." Notwithstanding the same, the respondent prepared an affirmation, dated October 15, 2005, in opposition to Dakis's motion to dismiss. The respondent contends that he did so because Gregston requested him to keep the action alive. Although that affirmation was served upon counsel for Dakis on October 17, 2005, it was not filed with the court until March 24, 2006.

On May 16, 2006, the respondent, Phillips, and counsel for Dakis appeared in court and executed a stipulation, in which they agreed that Phillips was relieved as attorney for the plaintiffs, that the respondent would appear as counsel for the plaintiffs, and that the action against Dakis was discontinued with prejudice.

By notice of motion dated June 25, 2006, the plaintiffs, represented by the respondent, moved pursuant to CPLR 3215 for leave to enter a default judgment solely against Global. In an order dated August 30, 2006, the Supreme Court denied the motion on the ground that the motion did not provide proof in

accordance with CPLR 3215 (f). Between August 30, 2006 and March 5, 2007, the respondent did not re-file a motion for leave to enter a default judgment or take any action to prosecute the consolidated action against Global. In an order dated March 5, 2007, the Supreme Court directed the dismissal of the consolidated action pursuant to CPLR 3216 (a) for failure to prosecute. According to Gregston's hearing testimony, the respondent never discussed with him how he was proceeding with the consolidated action, the status of the case, or that it had been dismissed.

Based upon the preponderance of the credible evidence, we find that the Special Referee properly sustained charges one and two. The Special Referee found, and we agree, that "[t]here was an inherent conflict of interest and a significant risk that [the respondent's] professional judgment would be adversely affected by his personal interest. And there is no evidence of 'informed consent.' " As demonstrated here, the difficulty in representing a party when a conflict is present is borne out by the respondent's actions once he became the attorney of record for the plaintiffs in the consolidated action. In filing the motion for leave to enter a default judgment, the respondent sought relief solely against Global, and failed to provide supporting proof. After the motion was denied, the Special Referee noted that such " 'defect' could have been cured easily, but respondent had a foot in both camps and he did nothing." Indeed, the respondent failed to take any further action on behalf of the plaintiffs, which resulted in the dismissal of the consolidated action by order dated March 5, 2007. As such, the Special Referee found that the "respondent's failure to act prejudiced his clients."

Accordingly, the petitioner's motion to confirm the report of the Special Referee insofar as it sustains charges one and two is granted, the branches of the respondent's cross motion to dismiss the petition and to disaffirm the report of the Special Referee as to charges one and two are denied, and charges one and two are sustained.

In view of the foregoing, the respondent seeks to reopen the hearing to present evidence in mitigation. The respondent contends that he concentrated on the factual and legal matters and believed mitigation and/or sanctions would be addressed at the second part of a bifurcated hearing. Nevertheless, we note that the respondent did, in fact, provide evidence during the hearing concerning his numerous volunteer and charitable

endeavors, and therefore, we deny the request to reopen the hearing. Indeed, the respondent testified that his volunteer activities included efforts on behalf of animal and environmental groups, the West Islip School Board, a 9/11 organization he established in his community, churches in Jamaica, Queens, for organizations serving people with disabilities and underprivileged children, the Fraternal Order of Police in Nassau County, and the Fire Marshal Benevolent Association of Nassau County.

With respect to an appropriate measure of discipline to impose, the respondent requests that this matter be referred back to the petitioner for a private reprimand, or in the alternative, that this Court impose a sanction no greater than a public censure. He contends that the misconduct is alleged to have occurred 10 years ago, does not involve venality, and resulted in no harm to anyone. Nevertheless, the Special Referee found, and we agree, that the "respondent's failure to act prejudiced his clients." Further, we find that a substantial factor in aggravation is the respondent's extensive disciplinary record, which reflects that he was: (1) censured by this Court for his false notarization of two authorizations in connection with the return of his client's bail, which were filed with the Nassau County Court (*see Matter of Bloom*, 99 AD3d 69 [2012]); (2) admonished for engaging in conduct prejudicial to the administration of justice after a court found him in contempt for failing to answer an information subpoena in connection with a default judgment obtained by a court reporting service; (3) admonished for failing to timely satisfy an arbitration award requiring him to refund $10,000 in legal fees to a former client in accordance with an order of this Court; and (4) admonished for his conduct as the attorney for the defendant in *Capetola v Capetola*, a divorce action in the Supreme Court, New York County. During the course of that action, the court determined that the respondent certified an intentionally misleading affidavit of his client, and submitted it to the court. The court imposed sanctions in the amount of $10,000, on both the defendant in that action and the respondent, which finding was unanimously affirmed by the Appellate Division, First Department, by decision and order dated June 21, 2012 (*see Capetola v Capetola*, 96 AD3d 612 [2012]). Further, the respondent received four cautions, among other things, for his inability to account for funds on deposit in his attorney trust account, for his withdrawal from representation of a client without taking all steps reasonably

practicable to avoid foreseeable prejudice to the client, and to ensure that he adequately communicate with his clients.

Under the totality of the circumstances, the respondent is suspended from the practice of law for a period of six months.

ENG, P.J., MASTRO, RIVERA, DILLON and LEVENTHAL, JJ., concur.

Ordered that the petitioner's motion to confirm the report of the Special Referee insofar as it sustains charges one and two is granted; and it is further,

Ordered that the branch of the respondent's cross motion which was to confirm the report of the Special Referee insofar as it declined to sustain charge three is granted, and the cross motion is otherwise denied; and it is further,

Ordered that the respondent, Eliot F. Bloom, is suspended from the practice of law for a period of six months, commencing October 21, 2016, with leave to apply for reinstatement one month before the expiration of said period, upon furnishing satisfactory proof that during said period he: (1) refrained from practicing or attempting to practice law, (2) fully complied with this opinion and order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended, and resigned attorneys (*see* 22 NYCRR 691.10), (3) complied with the applicable continuing legal education requirements (*see* 22 NYCRR 691.11 [c] [4]), and (4) otherwise properly conducted himself; and it is further,

Ordered that pursuant to Judiciary Law § 90, during the period of suspension, and until the further order of this Court, the respondent, Eliot F. Bloom, shall desist and refrain from (1) practicing law in any form, either as principal or agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,

Ordered that if the respondent, Eliot F. Bloom, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 691.10 (f).