Matter of Bloom (2019 NY Slip Op 09000)





Matter of Bloom


2019 NY Slip Op 09000


Decided on December 18, 2019


Appellate Division, Second Department


Per Curiam.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 18, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
WILLIAM F. MASTRO
REINALDO E. RIVERA
MARK C. DILLON
CHERYL E. CHAMBERS, JJ.


2017-11411

[*1]In the Matter of Eliot F. Bloom, a suspended attorney. Grievance Committee for the Tenth Judicial District, petitioner; Eliot F. Bloom, respondent. (Attorney Registration No. 2081453)



DISCIPLINARY PROCEEDING instituted by the Grievance Committee for the Tenth Judicial District. The Grievance Committee commenced a disciplinary proceeding pursuant to 22 NYCRR 1240.8 against the respondent by service and filing of a notice of petition dated October 23, 2017, and verified petition dated October 20, 2017, and the respondent served and filed a verified answer dated November 9, 2017. Subsequently, the Grievance Committee served and filed a statement of disputed and undisputed facts dated December 1, 2017, pursuant to 22 NYCRR 1240.8(a)(2), and the respondent served and filed a counterstatement of disputed and undisputed facts dated January 12, 2018. By decision and order on application of this Court dated February 7, 2018, the matter was referred to the Honorable Elaine Jackson Stack, as Special Referee, to hear and report. The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the Second Judicial Department on September 24, 1986.



By opinion and order of this Court dated September 21, 2016, the respondent was suspended from the practice of law for a period of six months, commencing October 21, 2016, in a separate disciplinary proceeding (Matter of Bloom, 143 AD3d 173; Appellate Division Docket No. 2014-10963). The respondent remains suspended.
Catherine A. Sheridan, Hauppauge, NY, for petitioner.
Longo & D'Apice, Brooklyn, NY (Mark A. Longo of counsel), for respondent.



PER CURIAM.


OPINION & ORDER
The Grievance Committee for the Tenth Judicial District served the respondent with a verified petition dated October 20, 2017, containing seven charges of professional misconduct. After a prehearing conference on May 7, 2018, and a hearing on June 28, 2018, August 29, 2018, September 14, 2018, October 15, 2018, and October 26, 2018, the Special Referee issued a report, which sustained all seven charges. The Grievance Committee now moves to confirm the report of the Special Referee and to impose such discipline upon the respondent as the Court deems just and proper. The respondent opposes the motion, asserting that charges two through seven should be dismissed, and that the appropriate sanction for charge one, if the Court sustains this charge, should be an Admonition or at most a public censure.
Petition
Charge one alleges that the respondent engaged in conduct that adversely reflects on [*2]his fitness as a lawyer, in violation of rule 8.4(h) of the Rules of Professional Conduct (22 NYCRR 1200.0), as follows: On or about July 25, 2016, the respondent was present in the County Court, Nassau County, in connection with his representation of a criminal defendant in a pending proceeding before the Honorable Meryl J. Berkowitz. Two female Nassau County Assistant District Attorneys (hereinafter together the ADAs) were prosecuting the case on behalf of the People. During a recess prior to opening statements, the ADAs were standing in a public area of the courthourse outside the courtroom and were engaged in conversation with another attorney, a former Assistant District Attorney, Mary Murray. While the ADAs and Murray were speaking, the respondent approached them and initiated a conversation with Murray. In response to Murray's inquiry regarding what the respondent was doing in court that day, the respondent stated, in sum and substance, "nothing, just doing a trial with these two sluts," indicating the ADAs. One of the ADAs immediately admonished the respondent for making this statement, to which the respondent stated "stop being so sensitive, this is how I speak to ADAs." Thereafter, the parties returned to the courtroom, where the ADA who admonished the respondent gave her opening statement.
Charge two alleged that the respondent neglected a legal matter entrusted to him, in violation of rule 1.3(b) of the Rules of Professional Conduct (22 NYCRR 1200.0), as follows: Beginning in or about 2009, the respondent represented Louis Wenger (hereinafter Wenger) in two related judicial dissolution proceedings commenced by Wenger's son, David Wenger (hereinafter David), entitled David Wenger v L.A. Wenger Contracting, Co. and Louis Wenger, commenced in the Supreme Court, Suffolk County, under Index No. 31701-2008 (hereinafter Action No. 1), and David Wenger v Railroad Realty Group, Inc., ECS Realty Inc., GDS Realty Group, Inc., Woodglen Realty LLC, and Louis Wenger, commenced in the Supreme Court, Suffolk County, under Index No. 2149-2009 (hereinafter Action No. 2), respectively. David alleged that he was a 31% shareholder of five closely held corporations and that Wenger, the 69% shareholder of the corporations, was guilty of oppressive actions toward David and had looted, wasted, or diverted corporate assets for noncorporate purposes. After a nonjury trial before the Supreme Court, Suffolk County (Emily Pines, J.), the Supreme Court found that David was a 31% shareholder of each of the corporations and that Wenger had engaged in "oppressive conduct" toward him. In lieu of dissolution, the court appointed Robert P. Lynn, as temporary receiver, to, among other things, determine the net values of the real properties at issue and select properties worth 31% of the total assets to be transferred to David. The court's decision was reduced to a judgment dated October 24, 2011.
On or about November 2, 2011, the respondent, on behalf of Wenger, filed a notice of appeal from the October 24, 2011, judgment. On or about November 14, 2011, David, by counsel, filed a notice of cross appeal.
In 2012, Wenger was concerned that the respondent was not adequately communicating with him about the status of his legal matters. Beginning in or about April 2012, Wenger enlisted the help of his daughter, Natalie Wenger (hereinafter Tasha), his son Daniel Wenger (hereinafter Daniel), and his friend, David Pepper, to assist him in communicating with the respondent. Beginning in or about April 2012, Tasha, Daniel, and Pepper (hereinafter collectively Wenger's representatives), on Wenger's behalf, engaged in email communications with the respondent regarding the status of legal matters the respondent was handling for Wenger.
In the spring of 2012, and with respect to the appeal, the respondent sought and received two enlargements of time to perfect the appeal. Pursuant to the later of the two, the enlargement was until August 2, 2012. The respondent failed to perfect the appeal by August 2, 2012, and failed to seek any further enlargements of time to do so. By decision and order on motion of this Court dated September 13, 2012, Wenger's appeal was dismissed for failure to perfect.
At all relevant times, Wenger expected and desired the respondent to perfect the appeal. Between in or about May 2012 and December 2012, Wenger's representatives, on Wenger's behalf, engaged in email communications with the respondent seeking information about the status of the appeal. Beginning in or about November 2012, Wenger's representatives sent urgent emails to the respondent demanding information about the appeal after discovering through an internet search that the appeal had been dismissed. At no time prior to November 2012 did the respondent advise Wenger or his representatives that the time to perfect the appeal had passed, nor did the respondent advise Wenger or his representatives that the appeal had been dismissed by decision and order on motion dated September 13, 2012.
In or about January 2013, Wenger retained new counsel, Paul Dashefsky, to represent him in connection with the appeal. By letter dated January 29, 2013, Dashefsky sought, among other things, to restore the appeal, and to enlarge the time to submit a response to David's cross appeal. By order on application dated February 1, 2013, this Court granted an enlargement of time to respond to the cross appeal, but did not restore the appeal. The cross appeal was decided by decision and order of this Court dated February 5, 2014, wherein this Court modified the October 24, 2011, judgment by adding thereto a provision awarding David an additional sum of $232,500, constituting 31% of a settlement award received by L.A. Wenger Contracting Co., Inc., in the sum of $750,000. Charge three alleges that the respondent failed to act with reasonable diligence and promptness in representing a client and neglected a legal matter entrusted to him, in violation of rule 1.3(a) and (b) of the Rules of Professional Conduct (22 NYCRR 1200.0), based on the factual specifications alleged in charge two, in addition to the following: In or about October 2012, the court-appointed Receiver, Robert P. Lynn, Jr., completed his report and recommendation, including an accounting with respect to the assets which were the subject of the judicial dissolution proceedings. On or about October 15, 2012, the Receiver moved, by two separate orders to show cause, one in Action No. 1 and one in Action No. 2, before the Supreme Court, Suffolk County (Emily Pines, J.), seeking, among other things, an order accepting his report and recommendation, and approving the accounting. The court signed the orders to show cause, providing a return date of November 8, 2012. The orders to show cause were served on the respondent, together with the papers in support of the Receiver's motions. The respondent sought and received several adjournments of the return date of the motions, but he never submitted a response. By decision and order dated December 10, 2012, the court granted the Receiver's motions, noting that no papers were submitted in opposition to the motions.
At all relevant times, Wenger expected and desired the respondent to file papers in opposition to the Receiver's motions. Between in or about October 2012 and January 2013, Wenger's representatives, on behalf of Wenger, engaged in email communications with the respondent seeking information about the status of the Receiver's motions and urging the respondent to prepare and file opposition papers. On or about January 22, 2013, the respondent moved in the Supreme Court, Suffolk County, by order to show cause, for a "stay of the proceeding" pending his submission of a response to the Receiver's report. By decision and order dated March 21, 2013, the Supreme Court denied the motion, finding:
"This Court signed the Order to Show Cause on October 15, 2012, making the return date November 8, 2012. Based on these time periods, both counsel had over three weeks to submit objections to the Receiver's Report from the time it was provided to them. Petitioner's counsel submitted his Affirmation in connection with the Receiver's Report on November 5, 2012. On November 6, 2012, Respondents' counsel contacted the Receiver to request more time to respond to the Receiver's Report and asked the Receiver to make the request. That the [sic] same day Respondents' counsel stated via e-mail that he needed an additional week or two. Following the Receiver's communication with the Court, the Receiver informed Respondents' counsel that his request was granted and he would be afforded an extra week to provide his position concerning the Report. Yet, Respondents' counsel obviously ignored this e-mail, since he contacted the Receiver again on November 15, 2012, asking when the adjourn date of the motion had been set. The Receiver informed him of the one week adjournment and advised Respondents' counsel to get his papers into the Court immediately. By that time, Respondents' counsel had been in possession of the Report for over one month. Again on November 29, 2012 Respondents' counsel sought more time to submit his opposition papers. The Receiver responded by stating that he had spoken to the Court's law Clerk and that the Court wanted to set up a conference; however, he reiterated that Respondents' counsel should get his papers into the Court immediately. No papers with any opposition from Respondents were forthcoming.
. . .
"A review of the post trial history of this case sets forth a more than sufficient basis to deny the Respondents' current motion for a stay. This is most significantly [*3]supported by the fact that as of the date of this writing in March 2013, over five months after the date of the Receiver's report, this Court has yet to receive any papers by Respondents setting forth their bases for opposition to the Report of the Receiver."
Charge four alleges that the respondent commenced a frivolous action that has no reasonable purpose other than to harass or maliciously injure another and knowingly asserted material factual statements that were false, in violation of rule 3.1 (a) and (b) of the Rules of Professional Conduct (22 NYCRR 1200.0), based on the factual specifications alleged in charges one, two, and three, in addition to the following: On or about July 30, 2014, Wenger, then 91 years old, filed a complaint against the respondent with the Grievance Committee alleging that the respondent engaged in professional misconduct based on, among other things, the factual specifications alleged in charges two and three. The complaint also alleged that the respondent had represented Wenger in a series of lawsuits over the years; that Wenger had paid the respondent an initial retainer and additional retainers through the years; and that despite multiple requests by Wenger, the respondent failed to provide bills and accounting details.
The complaint was referred to the Nassau County Bar Association for investigation, and the respondent submitted a response dated August 26, 2014, together with attachments, in which he denied "every statement alleged in the complaint." In a supplemental email submission to the Nassau County Bar Association dated December 12, 2014, the respondent provided a copy of an "invoice" addressed to Wenger reflecting a summary of legal services the respondent provided between December 23, 2010, and March 5, 2013, for a "total invoice amount" of $49,987.50. The respondent also provided a copy of an unsigned so-ordered stipulation dated January 24, 2011, in the two judicial dissolution proceedings, permitting the release of funds in the amount of $75,000 to each party "to be used for past, present and future attorneys fees." The stipulation permitting the release of funds was signed by the parties on or about January 25, 2011. On February 10, 2011, a cashier's check remitted from "LA Wenger, Inc.," in the amount of $75,000 was issued to the "Law Offices of Eliot Bloom" pursuant to the stipulation permitting the release of funds. The respondent deposited the check and retained $40,000 for legal fees. From those funds, the respondent issued a check dated February 14, 2011, from his account entitled "Law Office of Eliot F. Bloom P.C." made payable to "Louis Wenger" in the amount of $35,000, reflecting a refund to Wenger "for credit of legal fees." Neither the respondent's August 26, 2014, response to the complaint, nor his December 12, 2014, supplemental submission assert that Wenger owed the respondent any money for legal services rendered. In or about January 2015, the Nassau County Bar Association dismissed the complaint and the matter was referred back to the Grievance Committee.
By letter dated April 17, 2015, the Grievance Committee notified the respondent that it was reopening Wenger's complaint and requested the respondent submit a written answer. By letter dated April 21, 2015, the respondent submitted a written response with enclosures. By letter dated May 28, 2015, Wenger submitted a reply to the respondent's response.
On or about May 7, 2015, the respondent commenced an action in the Supreme Court, Nassau County, against Wenger, entitled Law Offices of Eliot F. Bloom v Louis A. Wenger, under Index No. 602833/15, by filing a summons and verified complaint dated April 22, 2015. The complaint alleged, among other things, that from 2008 to 2013, the respondent provided legal services for Wenger; that although invoices were sent, Wenger failed to pay for services performed; and that as a result, Wenger owed the respondent the sum of $49,987.50, plus interest, for which amount the respondent demanded judgment. Wenger, represented by Dashefsky, filed an answer dated June 15, 2015, denying that Wenger had failed to pay for legal services provided by the respondent and asserting affirmative defenses, including that the respondent failed to provided competent service and engaged in professional malpractice.
On or about December 30, 2015, the respondent was served with "Defendant's First Set of Interrogatories and Document Production Requests." On or about January 29, 2016, the respondent served Dashefsky with "Plaintiff's Response to First Set of Interrogatories." By so-ordered stipulation dated January 7, 2016, signed by Justice Randy Sue Marber, "EBTs of all parties" were directed "to be held on 2/2/16 at 2:00 p.m." On February 2, 2016, examinations before trial of both parties were conducted. During the respondent's examination of Wenger, the respondent did [*4]not ask Wenger any questions concerning the subject matter of the litigation entitled Law Offices of Eliot F. Bloom v Louis A. Wenger. The only questions the respondent posed to Wenger during the examination involved the grievance complaint filed against the respondent.
By letter dated February 16, 2016, the respondent advised the Grievance Committee that he had "deposed Louis Wenger in a related civil matter." In his letter, the respondent submitted to the Grievance Committee that Wenger's testimony established that he did not file the grievance complaint against the respondent. By so-ordered stipulation dated March 7, 2016, the respondent agreed to dismiss/discontinue the action with prejudice. The respondent did not receive any money or consideration from Wenger in exchange for the respondent agreeing to dismiss/discontinue the action with prejudice.
When the respondent commenced the action entitled Law Offices of Eliot F. Bloom v Louis A. Wenger, the respondent knew that Wenger did not owe him $49,987.50 in legal fees. The respondent had no reasonable purpose to commence the action other than to harass or maliciously injure Wenger.
Charge five alleges that the respondent engaged in dishonesty, fraud, deceit, or misrepresentation, in violation of rule 8.4(c) of the Rules of Professional Conduct (22 NYCRR 1200.0), based on the factual specifications alleged in charge four.
Charge six alleges that the respondent engaged in conduct prejudicial to the administration of justice, in violation of rule 8.4(d) of the Rules of Professional Conduct (22 NYCRR 1200.0), based on the factual specifications alleged in charge four.
Charge seven alleges that the respondent engaged in conduct that adversely reflects on his fitness as a lawyer, in violation of rule 8.4(h) of the Rules of Professional Conduct (22 NYCRR 1200.0), based on the factual specifications alleged in charges one through six.
Findings of Fact and Conclusions of Law
At the disciplinary hearing, the ADAs and Murray all testified that the respondent used the word "slut" in referring to the ADAs, whereas the respondent testified that he used the word "slugs," not "sluts." The Special Referee credited the testimony of the ADAs and Murray over that of the respondent, finding that the respondent had used a "flagrant misogynous term directed at two female attorneys." It is well-settled that in disciplinary proceedings, a Special Referee's findings on issues of credibility are entitled to great weight, since the Special Referee had the first-hand opportunity to judge and evaluate the testimony adduced (see Matter of Maggipinto, 125 AD3d 31; Matter of Lodes, 118 AD3d 54; see also Matter of Egger, 106 AD3d 77; Matter of Somers, 50 AD2d 396). Based on this Court's review of the evidence, we find no basis to disturb the Special Referee's finding. The respondent's testimony that he used the word "slugs" is patently incredible. Furthermore, we find no reason to disturb the Special Referee's other findings, for instance, that the respondent's failure to perfect the appeal was "egregious" in that, inter alia, the respondent never apprised Wenger's representatives of the dismissal of the appeal, precluding them from taking corrective action on a timely basis; that the respondent's action for nonpayment of fees was retaliatory as evidenced by, inter alia, the respondent's failure to produce bills to support his claim; the respondent's prior refund of fees to Wenger beyond the fees already received; the discontinuance of the action as per stipulation of the parties; and that the respondent "engaged in a pattern of misconduct as it related to his client."
Accordingly, based on the evidence adduced, the Grievance Committee's motion to confirm the report of the Special Referee is granted and all charges are sustained.
Mitigating factors in this case include the facts that the ADAs found that their previous relationship with the respondent was one of "mutual respect and professionalism," and that character letters submitted by the respondent all attested to his professionalism, respectful behavior, zealous advocacy, and compassion for his clients. The aforementioned mitigation, however, is overshadowed by the aggravating factors in this case. As noted by the Special Referee, the respondent strenuously refused to admit any of the charges. Moreover, the respondent has an extensive disciplinary history, consisting of a six-month suspension (Matter of Bloom, 143 AD3d 173), a censure (Matter of Bloom, 99 AD3d 69), three Admonitions, and four Letters of Caution. The respondent's present misconduct, alongside his prior disciplinary history, reveals a recurring thread of deceit.
In conclusion, we find that the respondent's conduct in aggregate merits his [*5]suspension from the practice of law. He committed serious misconduct on multiple fronts. His testimony lacked candor and he shows no remorse. Under the totality of the circumstances, we conclude that a suspension from the practice of law for three years, effective immediately, is warranted.
SCHEINKMAN, P.J., MASTRO, RIVERA, DILLON and CHAMBERS, JJ., concur.
ORDERED that the petitioner's motion is granted; and it is further,
ORDERED that the respondent, Eliot F. Bloom, is suspended from the practice of law for a period of three years, effective immediately, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than June 20, 2022. In such application (see 22 NYCRR 1240.16, 691.11), the respondent shall furnish satisfactory proof that during the period of suspension he (1) refrained from practicing or attempting to practice law; (2) fully complied with this order and with the rules governing the conduct of disbarred or suspended attorneys (22 NYCRR 1240.15); (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11(c)(3); and (4) otherwise properly conducted himself; and it is further,
ORDERED that during the period of suspension and until further order of the Court, the respondent, Eliot F. Bloom, shall continue to comply with the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15); and it is further,
ORDERED that pursuant to Judiciary Law § 90, during the period of suspension and until further order of the Court, the respondent, Eliot F. Bloom, shall continue to desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another; (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority; (3) giving to another an opinion as to the law or its application or any advice in relation thereto; and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,
ORDERED that if the respondent, Eliot F. Bloom, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 1240.15(f).
ENTER:
Aprilanne Agostino
Clerk of the Court